# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CORE CONSTRUCTION SERVICES SOUTHEAST, INC.,**

    **Plaintiff,**

**v.**                                                **Case No:   6:14-cv-1789-Orl-31KRS**

**CRUM & FORSTER SPECIALTY INSURANCE COMPANY,**

    **Defendant.**

## ORDER

This matter comes before the Court after a hearing on the Motion for Summary Judgment (Doc. 95) filed by the Plaintiff, Core Construction Services Southeast, Inc. ("Core Construction"), and the Motion for Summary Judgment (Doc. 120) filed by the Defendant, Crum & Forster Specialty Insurance ("Crum & Forster"), as well as the responses in opposition and replies to those motions filed by each party.

### I.     Background

Core Construction was the general contractor for a project known as the Artisan Club Condominium Community (henceforth, "Artisan Club").  In July, 2004, Core Construction hired a subcontractor to install windows at Artisan Club.  (Doc. 88-1).  The identity of that subcontractor is one of the points of contention in the instant suit.  The subcontractor is identified on the relevant contract (henceforth, the "Subcontract") as "Dunn Lumber & Overhead Door Co.," (Doc. 88-1 at 2), but Core Construction contends that the subcontractor was The Dunn Corporation, which was simply doing business as "Dunn Lumber & Overhead Door Co."  Among other obligations,

Appendix "B" to the Subcontract provided that "Core Construction must be named as 'Additional Insured' on your General Liability policy."   (Doc. 88-1 at 9).

The Dunn Corporation was insured under a Commercial General Liability policy issued by Crum & Forster (henceforth, the "CGL Policy").   The CGL Policy included a "Self-Insured Retention Endorsement," which provided that Crum & Forster's

> total limit of liability … shall apply in excess of the retained limit (herein called the Self-Insured Retention) as stated in the endorsement, and the Named Insured agrees to assume this retained limit.

(Doc. 95-2 at 43).   The Self-Insured Retention amount was set at $250,000 per claim.   (Doc. 95-2 at 43). The endorsement further provided that

> [o]ur obligation to pay damages and defend claims or "suits" under this policy applies only when the amount of the Self-Insured Retention has been exhausted by the insured's payment of damages or "Claims Expense" that would be covered by this policy but for the application of the Self-Insured Retention.

(Doc. 95-2 at 44).

In October 2009, the Artisan Park Club Condominium Association (henceforth, the "Condominium Association") sued Core, the St. Joe Corporation and Artisan Park L.L.C. for damages allegedly arising from the construction and sale of the units at Artisan Club.   (Doc. 1-1 at 2).   According to the complaint in that action (henceforth, the "Underlying Action"), the Condominium Association sought to recover damages allegedly caused by

> deficiencies in the design and construction of the Subject Property, including, but not limited to: architectural defects; structural defects; fire-safety defects; waterproofing defects; defects in civil drainage and landscaping defects; defects in the foundation systems, framing systems, plumbing and HVAC systems, roofing systems, and cladding systems; defects in windows and exterior doors, masonry rebar and grout structural components, exterior concrete flatwork, decks, walkways, flooring systems, drywall assemblies and truss systems; and the material and workmanship incident to their installation.

(Doc. 1-1 at 6).  In Count I of the Underlying Action, the plaintiff asserted that all three defendants had committed building code violations.  The remaining counts asserted claims for breaches of statutory warranties and deceptive and unfair trade practices and were only asserted against the St. Joe Corporation and Artisan Park L.L.C.

In March 2010, Core tendered the Underlying Action to Crum & Forster for a defense and indemnification, but Crum & Forster denied coverage.  On October 3, 2014, Core Construction filed the instant suit, alleging that Crum & Forster had beached the CGL Policy by refusing to defend and indemnify Core Construction in the Underlying Action.

## II.     Legal Standards

### A.     Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue

for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.   Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.*   The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.   *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.   The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments.   *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### B.    Insurance Contracts and Self-Insured Retention

> Under Florida law, the interpretation of insurance contracts . . . is governed by generally accepted rules of construction.   *U.S. Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871, 877 (Fla. 2007).   "Insurance contracts are construed according to their plain meaning.  Ambiguities are construed against the insurer and in favor of coverage."  *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.,* 913 So.2d 528, 532 (Fla. 2005).   However, courts only look to the rules of construction "when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction."   *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen,* 498 So.2d 1245, 1248 (Fla. 1986)).   Courts may not "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties."   *Id.* (quoting *Pridgen,* 498 So.2d at 1248).   Further, "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect."  *J.S.U.B.,* 979 So.2d at 877 (quoting *Auto–Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000)).   "Although exclusionary clauses cannot be relied upon to create coverage, principles governing the construction of insurance contracts dictate that when construing an insurance policy to determine coverage the pertinent provisions should be read

> *in pari materia.*"  *Id.* (quoting *State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So.2d 1072, 1074–75 (Fla. 1998)).

*Intervest Construction of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497-98 (Fla. 2014).

> A self-insured retention is similar to a deductible, with two primary differences.   First, a deductible is deducted from the overall policy limits, while policy limits stack on top of a SIR.   Second, an insurer is typically not required to provide coverage until the SIR is paid, which is not the case with a deductible.  *State National Insurance Company v. Lamberti*, 362 Fed.Appx. 76, 78 (11th Cir. 2010); *Public Risk Management of Florida* v. *One Beacon Ins. Co.,* 569 Fed.Appx. 865, 869 n. 5 (11th Cir. 2014).

*Summit Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 76 F. Supp. 3d 1381, 1384 (M.D. Fla. 2015)

**III.   Analysis**

Crum & Forster[1] offers three arguments in favor of summary judgment, the first of which is that Core Construction does not qualify as an additional insured under the CGL Policy because the entity with which it subcontracted, Dunn Lumber & Overhead Door Co., was itself not an insured under the CGL Policy.[2]   Pursuant to a "Named Insured Listing Endorsement" to the CGL Policy, the named insured included not only the Dunn Corporation but fifteen other entities, such as Dunn Lumber of Daytona Beach, Overhead Door Company of Daytona Beach, and Dunn Brothers Hardware.   (Doc. 63-1 at 52).   However, "Dunn Lumber & Overhead Door Co." was not included in that endorsement's list of additional named insureds.

Core Construction responds that the other party to the Subcontract was actually the Dunn Corporation, which was simply doing business under the fictitious name of Dunn Lumber &

---

[1] The parties' summary judgment arguments are essentially mirror images of each other Thus, for simplicity's sake, the Court will use Crum & Forster's motion as a framework for resolving both motions.

[2] It is undisputed that the Dunn Corporation was a named insured under the CGL Policy.

Overhead Door Co. In support, Core Construction points to an affidavit from the Dunn Corporation's general counsel, Daniel Webster, stating that the Dunn Corporation routinely did business under fictitious names similar to the one on the Subcontract and was, in fact, the entity that entered into the Subcontract with Core Construction and performed the window installations at Artisan Club. (Doc. 95-1 at 3-4). In the affidavit, Webster also notes that (1) the Subcontract was signed by an officer of the Dunn Corporation and (2) a number of the documents attached to the Subcontract (such as a Form W-9 – Request for Taxpayer Identification Number) were signed by officers of the Dunn Corporation in their capacities as such. (Doc. 95-1 at 4). Upon review, the Court finds that the evidence produced by Core Construction as to the identity of the other party to the Subcontract is enough to raise a genuine issue of material fact, precluding summary judgment.

Crum & Forster next argues that Core Construction is not entitled to coverage under the CGL Policy for a second reason – a purported addendum (henceforth, the "Dunn Addendum") to the Subcontract. The Dunn Addendum, by its terms, eliminated the subcontractor's obligation to add Core Construction as an additional insured on its liability policy.

The issue of the Dunn Addendum only recently surfaced in this litigation. Initially, the copies of the Subcontract produced from the files of Core Construction and from the Dunn Corporation included, on the first page, stamped instructions to "See the Dunn Corporation Addendum Attached." (Doc. 120-5 at 1). Those instructions were initialed, apparently by the individuals who signed the Subcontract, but these copies of the Subcontract did not include an attached addendum.

More recently, while reviewing documents produced by Core Construction to a former party to this case, Crum & Forster's counsel located a copy of the Dunn Addendum. Dunn's general counsel, Webster, testified that it was standard operating procedure to include the Dunn Addendum

in all of Dunn's construction contracts, and that the Dunn Addendum was included in the Subcontract. Core Construction argues that the copy of the Dunn Addendum that was produced in this case was simply a draft, which was not approved by Core Construction, and that it was not included in the Subcontract, as shown by its absence from the copies of the Subcontract found in the files of the Dunn Corporation and Core Construction.[3]

As with the issue of the identity of the subcontractor, genuine issues of material fact remain regarding the inclusion of the Dunn Addendum in the Subcontract, preventing the entry of summary judgment on this point.

Finally, Crum & Forster argues that, even assuming that Core Construction is an additional insured under the CGL Policy, it has no obligation to defend or indemnify because the $250,000 SIR amount has not been satisfied.[4]  Core Construction argues that the SIR does not apply to it, because it is an additional insured, rather than a "Named Insured," and the Self-Insured Retention Endorsement provides that "the Named Insured agrees to assume this retained limit."   (Doc. 95-2 at 43).   This argument is true as far as it goes.   However, the Self-Insured Retention Endorsement also provides that Crum & Forster's obligation

> to pay damages and defend claims or "suits" under this policy applies
> only when the amount of the Self-Insured Retention has been
> exhausted by the insured's payment of damages or "Claims Expense"
> that would be covered by this policy but for the application of the
> Self-Insured Retention.

---

[3] Core Construction also argues that certain Certificates of Insurance (Doc. 130-2) show that the Dunn Corporation complied with the requirement that Core Construction be provided additional insured coverage.   This would be inconsistent with a belief, on the part of the Dunn Corporation, that the Dunn Addendum had been made part of the Subcontract and eliminated any such requirement.   However, so far as the Court is able to discern, the cited Certificates of Insurance establish that the St. Joe Company has been listed as an additional insured, not Core Construction. *See id.*

[4] It is undisputed that the Dunn Corporation, which was administratively dissolved in 2014, has not paid anything toward the SIR.

...

(Doc. 95-2 at 44).   Thus, until that $250,000 limit has been reached, Crum & Forster has no obligation to defend or indemnify Core Construction.

Core Construction admits that it has not yet spent $250,000 in connection with the instant litigation.   John Wiseman, president of Core Construction, provided an affidavit that included the following:

> As a result of Crum & Forster's refusal to defend [Core Construction] in the Underlying Action, [Core Construction] has suffered damages, including unpaid defense costs and fees related to the Underlying Action (totaling $100,643.76), was compelled to retain the undersigned counsel and is obligated to pay the undersigned reasonable attorneys' fees for its services (the amount of which remains undetermined due to the ongoing nature of this case.
>
> The total defense costs paid on behalf of [Core Construction] in the Underlying Action are in excess of $300,000.00.

(Doc. 95-9 at 4).   Core Construction argues that, to the extent the SIR amount is applicable to its claim, the $300,000-plus spent on its behalf meets the requirement.   Crum & Forster contends that, based on the language of the Self-Insured Retention Endorsement, only payment by the insured itself will suffice.

Though not on all fours, the Florida Supreme Court dealt with a similar situation in *Intervest Construction of Jax, Inc. v. General Fidelity Insurance Co.*, 133 So. 3d 494 (Fla. 2014).   In that case, a homeowner who suffered injuries in a fall from attic stairs sued ICI Homes, Inc. ("ICI"), the general contractor that built the home; ICI then sought indemnification from Custom Cutting, Inc. ("Custom Cutting"), the subcontractor that installed the stairs.[5]   *Id.* at 496.   At mediation, ICI, Custom Cutting, and their respective liability insurers agreed to pay the homeowner $1.6 million. *Id.*   The subcontractor's insurer, North Pointe Insurance Company ("North Pointe") agreed to pay $1 million of this sum to satisfy Custom Cutting's indemnification obligation.   *Id.*   North Pointe

---

[5] ICI was not an additional insured under its subcontractor's liability policy.   *Id.*

paid that amount to ICI, which then paid it over to the homeowner. *Id.* ICI and its liability insurer, General Fidelity Insurance Company ("General Fidelity"), disagreed as to which one bore responsibility for the remaining $600,000; they resolved the disagreement by each paying $300,000 and then suing one another for reimbursement. *Id.*

The General Fidelity liability policy had a Self-Insured Retention Endorsement in the amount of $1 million. *Id.* ICI argued that the $1 million it received from North Pointe to satisfy Custom Cutting's indemnification obligation and then paid to the homeowner satisfied the SIR amount. General Fidelity argued that the liability policy stated that the "Retained Limit" would only be reduced by payments "made by the insured," and because the payment had originated from North Pointe, the retention amount had not been satisfied and there was no coverage. *Id.* at 498. Despite the policy language, the *Intervest* court found that the insured could apply third-party payments toward satisfaction of the $1 million SIR. *Id.* at 503.

The language in the policy in the instant case requires payment "by the insured," but it is no more restrictive than the language at issue in *Intervest*. Accordingly, the Court holds that the SIR amount here may be satisfied by payments made by third parties. On this record, however, the Court cannot conclude that the $300,000-plus paid by other insurers should be applied to satisfy the SIR. As described above, the claims asserted against Core Construction in the Underlying Action appear to extend far beyond the window installations allegedly performed by the Dunn Corporation, encompassing architectural defects, plumbing and HVAC issues, and more. *See* Doc. 1-1 at 6. But the Self-Insured Retention Endorsement provides Crum & Forster's obligation to defend or indemnify only arises when

> the amount of the Self-Insured Retention has been exhausted by the insured's payment of damages or "Claims Expense" that would be covered by this policy but for the application of the Self-Insured Retention.

(Doc. 95-2 at 44) (emphasis added).   Without more information, the Court cannot determine whether the money spent by the other insurers was paid toward items that would have been covered by the CGL Policy but for the application of the Self-Insured Retention.   It is possible that the money was spent on litigation expenses related to work performed by other subcontractors, or by Core Construction directly, which would not appear to be covered by the CGL Policy.   Again, this issue cannot be resolved on summary judgment.

### IV.     Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 95) filed by the Plaintiff, Core Construction Services Southeast, Inc., and the Motion for Summary Judgment (Doc. 120) filed by the Defendant, Crum & Forster Specialty Insurance, are **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 1, 2016.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party